UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CITY OF BENTON HARBOR,

    Plaintiff,

v.

                            Case No. 1:25-cv-861

THE TRAVELERS INDEMNITY
COMPANY OF CONNETICUT, et al.,

                            Hon. Hala Y. Jarbou

    Defendants.
_____/

**OPINION**

    The City of Benton Harbor sued its insurers in state court seeking a judgment that the insurers are obligated to defend and indemnify the City for lawsuits brought by residents of the City for injuries caused by lead-contaminated water in the City's water supply. (*See* Compl., ECF No. 1-1.) Those insurers, The Travelers Indemnity Company of Connecticut, The Travelers Indemnity Company, and Travelers Property Casualty Company of America (collectively, "Travelers"), removed the matter to this Court on the basis of diversity jurisdiction. The City and other parties ask the Court to remand the case. For the reasons herein, the Court will deny the motions to remand.

**I. BACKGROUND**

    In November 2021, a group of City residents sued the City and other defendants in this Court, asserting harm resulting from lead-contaminated water provided by the City. *See Braziel v. Whitmer*, No. 1:21-cv-960 (W.D. Mich. Nov. 10, 2021). In May 2022, a different group of City residents brought a similar action against the City in this Court. *See Mitchell v. City of Benton Harbor*, No. 1:22-cv-475 (W.D. Mich. May 27, 2022). In 2023, after the Court declined to exercise supplemental jurisdiction over the state-law claims in *Braziel*, the plaintiffs in that case

brought those claims against the City in state court. *See Braziel v. City of Benton Harbor Water Dept.*, No. 23-0249 (Berrien Cnty. Cir. Ct.). These three cases remain pending.

In June 2025, the City brought the current case against Travelers in Berrien County Circuit Court, seeking damages against Travelers as well as a declaratory judgment that the City's insurance contracts with Travelers require Travelers to defend and indemnify the City for the claims in the *Braziel* and *Mitchell* lawsuits. (*See* Compl. ¶ 1.) In its complaint, the City also named the plaintiffs in the *Braziel* and *Mitchell* cases (collectively, the "Injured Plaintiffs") as defendants because these individuals "are entitled to notice and an opportunity to be heard" in the declaratory judgment action. (*See id.* ¶ 2.) The City does not assert any claims against these individuals.

In Count I, the City claims that Travelers has breached contracts requiring Travelers to defend the City in the *Braziel* and *Mitchell* lawsuits and that Travelers is therefore liable to the City for the costs and expenses it has incurred in defense. In Count II, the City claims that Travelers has breached contracts requiring Travelers to indemnify the City for expenses incurred in connection with the claims asserted against the City in the *Braziel* and *Mitchell* lawsuits and that Travelers is therefore liable for damages due to that breach. In Count III, the City seeks a declaration that its commercial general liability ("CGL") policy with Travelers provides coverage for the claims in the *Braziel* and *Mitchell* lawsuits. Travelers allegedly denied coverage under the "Pollution Exclusion" and "Lead Exclusion" provisions of the policy. (*Id.* ¶ 47.) In Count IV, the City seeks a declaration that its public entity management liability ("PEML") policy with Travelers provides coverage for the claims in the *Braziel* and *Mitchell* lawsuits. Travelers allegedly denied coverage under the "Injury or Damage," "Pollution," and "Pollution-Related" exclusions in this policy. (*Id.* ¶ 52.) In Count V, the City seeks a declaration that its excess policy with Travelers

2

provides coverage for the claims in these lawsuits. For Counts III, IV, and V, the City seeks an award of its costs of defending the *Braziel* and *Mitchell* lawsuits.

On July 30, 2025, Travelers removed the case to this Court on the basis of diversity jurisdiction. (Notice of Removal, ECF No. 1.) The City and the Injured Plaintiffs move to remand the case to Berrien County Circuit Court.

## II. ANALYSIS

### A. Subject Matter Jurisdiction

The Court must remand the case to state court if the Court lacks subject matter jurisdiction. Travelers relies upon diversity jurisdiction as the basis for jurisdiction. "[D]iversity jurisdiction must exist at the time of removal." *Roberts v. Mars Petcare US, Inc.*, 874 F.3d 953, 958 (6th Cir. 2017). Diversity jurisdiction requires complete diversity of the parties and an amount in controversy greater than $75,000. 28 U.S.C. § 1332(a). There is no question that the amount in controversy exceeds $75,000. At issue is whether there is complete diversity of the parties.

Travelers argues that complete diversity exists because the City is a citizen of Michigan whereas Travelers is a citizen of Connecticut. Travelers contends that the Court can disregard the citizenship of the Injured Plaintiffs because those individuals have been fraudulently joined to the case. The City and the Injured Plaintiffs disagree. They contend that the Injured Plaintiffs are proper parties and that their presence as defendants defeats complete diversity because they are citizens of Michigan. Consequently, the City and the Injured Plaintiffs ask this Court to remand the case to state court.

"[F]raudulent joinder of non-diverse defendants will not defeat removal on diversity grounds." *Cline v. Dart Transit Co.*, 804 F. App'x 307, 310 (6th Cir. 2020) (quoting *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009)). "Fraudulent joinder occurs

3

when the non-removing party joins a party against whom there is no colorable cause of action." *Id.* (quoting *Saginaw Hous. Comm'n*, 576 F.3d at 624).

"The removing party has the burden to prove fraudulent joinder, and it 'must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law.'" *Tennial v. Bank of Am., N.A.*, No. 17-6377, 2020 WL 2530872, at *2 (6th Cir. Apr. 15, 2020) (quoting *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999)). Travelers' burden is a "heavy one." *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 953 (6th Cir. 2011) (quoting *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003)). "There can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law." *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (quoting *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 176 (5th Cir. 1968)). "[T]he question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Id.* (quoting *Bobby Jones Garden Apartments*, 391 F.2d at 176). "[A]ny disputed questions [of] fact and ambiguities in the controlling state law [should be resolved] . . . in favor of the nonremoving party." *Roof v. Bel Brands USA, Inc.*, 641 F. App'x 492, 496 (6th Cir. 2016) (quoting *Alexander*, 13 F.3d at 949). More broadly, "[a]ll doubts as to the propriety of removal are resolved in favor of remand." *Coyne*, 183 F.3d at 493.

When deciding a motion to remand, the Court applies a test "similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012). "As appropriate," the Court can "pierce the pleading and consider summary judgment evidence, such as affidavits presented by the parties." *Id.* (internal quotation marks omitted). "The court may look to material outside the pleadings for the limited

4

purpose of determining whether there are 'undisputed facts that negate the claim.'" *Id.* (quoting *Walker*, 443 F. App'x at 956).

Under the fraudulent joinder test as described in *Alexander*, the Injured Plaintiffs are not proper defendants because there is no possible claim for recovery against them by the City. This action involves the City's attempt to enforce its insurance agreements with Travelers. The City is not seeking recovery from, or a declaratory judgment against, the Injured Plaintiffs.

On the other hand, Michigan case law indicates that a Michigan court would permit the Injured Plaintiffs to remain in the case. In *Allstate Insurance Co. v. Hayes*, 499 N.W.2d 743 (Mich. 1993), an insurer brought a declaratory judgment action against its insured and the injured party in order to declare the rights and liabilities of all the parties under an insurance policy. After the insured conceded that there was no coverage under the policy, the Michigan Court of Appeals held that the injured party did not have "standing" to contest the policy's coverage, so the injured party could not continue in the action brought by the insurer. *See id.* at 745. The Michigan Supreme Court reversed that decision, noting that Michigan's rules for declaratory judgment permit courts to "declare the rights and other legal relations of an *interested party* seeking a declaratory judgment." *Id.* at 747 (quoting Mich. Ct. R. 2.605 (emphasis added)). And an injured party has an interest in an insurance coverage dispute between the insured and insurer because the injured party could, if successful in their claim against the insured, pursue a claim for garnishment against the insurer. *See id.* at 745. Also, because an injured party is not bound by a coverage decision in a case in which it was not a party, an insurer must join the injured party to the suit in order to bind the injured party to the coverage decision. *See id.* at 748 n.12. Consequently, "the injured party in an insurer's action for declaratory judgment is a proper party to that action." *Id.* at 748 (citing *Cloud v. Vance*, 296 N.W.2d 68 (Mich. Ct. App. 1980)); *see also Md. Cas. Co. v. Pac. Coal & Oil*

*Co.*, 312 U.S. 270, 273–74 (1941) (holding that an "actual controversy" exists in a declaratory judgment action between an insurer and an injured party where state law permits the injured party to seek recovery from the insurer).

While the case at hand is different from *Hayes* in that the *insured* party has brought the suit instead of the insurer, the interests of the injured party are the same in both cases. In other words, the Injured Plaintiffs have an interest in the outcome of the Court's insurance coverage determination in this lawsuit. If the Injured Plaintiffs are successful in their claims against the City, then they will have a right to seek recovery from Travelers. A declaratory judgment action involving both the City and the Injured Plaintiffs is a sensible method for determining the rights of the City to any insurance benefits from Travelers, and for binding the Injured Plaintiffs to that decision should they become entitled to recovery against the City. "Federal courts therefore have found that a non-diverse defendant was not fraudulently joined, even though no colorable claim was asserted against it and no relief was sought from that party, where it was a necessary party to the action under state law because its interests would be substantially effected by a judgment." *Scott v. State Farm Fire & Cas. Co.*, No. CIV. 13-13287, 2014 WL 3054784, at *4 (E.D. Mich. July 7, 2014). Given that the Injured Plaintiffs are proper parties to this action under Michigan law, they were not fraudulently joined.

Nevertheless, there are ways to avoid the jurisdictional problem created by the Injured Plaintiffs' presence in the case. One is to drop the Injured Plaintiffs from the case under Rule 21 of the Federal Rules of Civil Procedure, if they are "dispensable" parties. *See Yuille v. Am. Home Mortg. Servs., Inc.*, 483 F. App'x 132, 134 n.1 (6th Cir. 2012); *Maher v. Federated Serv. Ins. Co.*, 666 F. App'x 396, 401 (6th Cir. 2016) (noting the court's authority to "dismiss dispensable non-diverse parties" under Rule 21). That option is undesirable because a Michigan court would likely

allow the Injured Plaintiffs to remain in the case. In addition, dropping the Injured Plaintiffs could potentially result in multiple lawsuits deciding the coverage issue, which is a waste of resources.

The other option is to realign the parties. It is "well established" that

> *[t]he courts, not the parties, are responsible for aligning the parties according to their interests in the litigation.* If the interests of a party named as a defendant coincide with those of the plaintiff in relation to the purpose of the lawsuit, the named defendant must be realigned as a plaintiff for jurisdictional purposes.

*U.S. Fidelity & Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1089 (6th Cir. 1992) (quoting *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1523 (9th Cir. 1987)). To assess whether realignment is warranted, the Court looks to whether there is a "'collision between the interests of the plaintiff and the interests of the [defendant]' as originally aligned in [the] action." *Id.* (quoting *Indianapolis Gas v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941)). The collision of interests is "ascertained from the principal purpose of the suit, . . . and the primary and controlling matter in dispute." *Id.* (quoting *Indianapolis Gas*, 314 U.S. at 69 (quotation marks omitted)).

Here, there is no meaningful collision between the City's interests and those of the Injured Plaintiffs. To the contrary, when viewed in relation to the purpose of the lawsuit, their interests coincide. The primary purpose of the lawsuit is to determine whether Travelers must defend and indemnify the City for claims brought by the Injured Plaintiffs. Both the City and the Injured Plaintiffs stand to benefit from a ruling in the City's favor. *See Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 559 (6th Cir. 2010) (finding parties' interests to be aligned where one party's success in the lawsuit will benefit the other).

The Injured Plaintiffs cite cases outside this Circuit in which courts found conflicting interests between the injured party and the insured tortfeasor in a suit for coverage brought by or against the insurer. *See, e.g.*, *Bernstein v. State Farm Fire & Cas. Co.*, 711 F. Supp. 3d 1282, 1287

7

(W.D. Okla. 2024); *Stallings & Sons, Inc. v. EMC Prop. & Cas. Co.*, No. 2:19-CV-392-WKW, 2020 WL 1540395, at *3 (M.D. Ala. Mar. 31, 2020); *Dream Builders of S. Fla. Corp. v. Mid-Continent Cas. Co.*, No. 18-23123-CIV, 2019 WL 3821552, at *3 (S.D. Fla. Aug. 15, 2019). In these cases, courts reasoned that a conflict existed because some injured plaintiffs may have ideological or strategic reasons for preferring that the tortfeasor bear its own costs of defense or liability. For instance, an injured plaintiff may conclude that he is more likely to succeed against a tortfeasor who is forced to pay for its own counsel because that would "potentially strand[] the insured party with worse representation, or no representation, in the underlying [tort] action." *See Bernstein*, 711 F. Supp. 3d at 1287. Or an injured plaintiff might believe that a tortfeasor with no insurance coverage would be more inclined to settle for practical reasons. *See Dream Builders*, 2019 WL 3821552, at *3. Or an injured plaintiff might prefer that the tortfeasor bear the full cost of their wrongdoing rather than shift most of that cost to an insurer.

The foregoing considerations have little application to this case. The City is already represented by competent counsel in the *Braziel* and *Mitchell* lawsuits, so there is little possibility that the Injured Plaintiffs will benefit from a denial of defense coverage. In addition, the Injured Plaintiffs have expressly indicated that they are willing to settle for amounts that are tied to the City's insurance policy limits. (*See* Settlement Demands, ECF Nos. 26-1, 26-2.) Indeed, in the *Mitchell* and *Braziel* cases, the Injured Plaintiffs have sought preliminary approval of a settlement that would assign them the right to pursue the City's claims against Travelers, and would allow the Injured Plaintiffs to step into the City's shoes in this lawsuit. *See* Mot. for Settlement, ECF No. 319, *Braziel v. Whitmer*, No. 1:21-cv-960 (W.D. Mich.). Thus, it does not appear that the Injured Plaintiffs would prefer that the City lose its coverage dispute and bear the full cost of litigation and judgment. Finally, as indicated, success for the City in this coverage suit would

8

likely benefit the Injured Plaintiffs in the event of a judgment against the City. Accordingly, their interests are aligned. As such, the Court will realign the parties for purposes of jurisdiction so that the Injured Plaintiffs are plaintiffs in this action, bringing the case into compliance with the requirement for complete diversity.

### B. Lack of Consent Before Removal

One obstacle to removal remains. Under 28 U.S.C. § 1446(b)(2)(A), "all defendants who have been properly joined and served must join in or consent to the removal of the action." The City and the Injured Plaintiffs argue that the Injured Plaintiffs were properly joined to the case and did not consent to removal, so § 1446(b)(2)(A) bars removal of the case. But where, as here, a non-consenting defendant is realigned to become a plaintiff, courts have found that § 1446(b)(2)(A) is not an obstacle to removal. *See Byrd v. Wine*, No. 3:16-CV-02738, 2017 WL 67993, at *6–7 (M.D. Tenn. Jan. 6, 2017) (collecting cases); *Diaz v. Empire Fire & Marine Ins. Co.*, No. CV 24-1549, 2024 WL 3606345, at *4 (E.D. Pa. July 31, 2024) ("Because Johnson has been realigned as a plaintiff, Empire did not require his consent to remove."); *McKeen v. Cont'l Cas. Co.*, No. 10-10624, 2010 WL 3325200, at *2 (E.D. Mich. Aug. 19, 2010) (permitting removal without consent of defendant who was realigned to become plaintiff because seeking "consent prior to removal would . . . have required a meaningless act, as no set of circumstances would allow this case to be heard in federal court with [the realigned party] as a party-defendant"). As *Byrd* indicates, the consent requirement "is designed only to insure a unanimous choice of a federal forum by the defendants. It cannot reasonably be understood to give a party who in reality occupies a position in conflict with that of other defendants a veto over the removal of the action." *Byrd*, 2017 WL 67993, at *7 (quoting *Premier Holidays Int'l, Inc. v. Actrade Capital, Inc.*, 105 F. Supp. 2d 1336, 1341 (N.D. Ga. 2000)). The Court agrees with the logic of those cases. Because the

9

Injured Plaintiffs are properly aligned as plaintiffs in this case, their consent is not necessary for removal.

### C. Discretionary Exercise of Jurisdiction – Declaratory Judgment Act

Next, the City argues that the Court should decline to exercise jurisdiction under the Declaratory Judgment Act. The Court has "discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Travelers Indem. Co. v. Bowling Green Pro. Assocs., PLC*, 495 F.3d 266, 271 (6th Cir. 2007) (quoting *Adrian Energy Assocs. v. Mich. Pub. Serv. Comm'n*, 481 F.3d 414, 421 (6th Cir. 2007)).

"In determining the propriety of entertaining a declaratory judgment action, competing state and federal interests weigh in the balance, with courts particularly reluctant to entertain federal declaratory judgment actions premised on diversity jurisdiction in the face of a previously-filed state-court action." *Adrian Energy*, 481 F.3d at 421. The Court considers the following factors:

> (1) whether the declaratory action would settle the controversy;
>
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
>
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
>
> (5) whether there is an alternative remedy which is better or more effective.

*Cardinal Health, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 29 F.4th 792, 796–97 (6th Cir. 2022) (quoting *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)).

"With regard to the first factor, several cases hold that a declaratory judgment regarding coverage does 'settle the controversy,' because it resolves the dispute between the insurer and insured over who will pay for the state-court litigation." *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 397 (6th Cir. 2019). In cases holding otherwise, the state-court tort plaintiffs were not part of the declaratory judgment action, so the action would not settle the controversy between all relevant parties. *See id.* In this case, however, the state-court tort plaintiffs are part of the action. Thus, this factor favors the exercise of jurisdiction.

For the second factor, the Sixth Circuit has held that a declaratory judgment action between an insurer and insured would serve a useful purpose by settling "the legal relationship of the insurer and the insured." *Id.* at 399. Similarly, this case would settle the legal relationship between the City and Travelers concerning City's insurance policies and their coverage for the claims raised in the *Braziel* and *Mitchell* lawsuits. That controversy is not being litigated in any other case. Thus, the second factor also favors the exercise of federal jurisdiction.

Regarding the third factor, there is no evidence of procedural fencing or a race to res judicata, so this factor is neutral. *See id.* ("[W]e generally do not make a finding of procedural fencing if the declaratory-judgment plaintiff filed *after* the commencement of litigation in state court.").

The Sixth Circuit has divided the fourth factor into three sub-parts:

(1) whether the underlying factual issues are important to an informed resolution of the case;

(2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Cardinal Health*, 29 F.4th at 799.

11

Regarding the first subfactor, the City notes that the coverage dispute could require the Court to examine some disputed facts that may be at issue in the underlying liability suits. According to the City, because Travelers relied upon pollution, lead, and bodily injury exclusions to its policies, the Court may have to determine how the Injured Plaintiffs' injuries originated, including whether the lead or pollutants originated on City-owned property. This factor weighs against exercising jurisdiction.

As to the second subfactor, this Court is equally equipped to address any factual issues, though a state court is in a better position to resolve insurance issues governed by state law. "[N]ovel issues of state law" might lean against exercising jurisdiction, but the parties have not identified any such issues, so this factor is neutral. *See Mass. Bay Ins. Co. v. Christian Funeral Dirs., Inc.*, 759 F. App'x 431, 440 (6th Cir. 2018).

"The third subfactor 'focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court.'" *Id.* (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 561 (6th Cir. 2008)). Generally, "state courts are better positioned to resolve insurance disputes because they are more familiar with the governing laws, and those laws are enacted to protect the citizens of the state." *Id.* This factor weighs against exercising jurisdiction. *See id.*

Regarding the fifth factor, alternative remedies are not necessarily better or more effective than this declaratory judgment action. This case is the only one in which the coverage issue has been raised. On the other hand, all else being equal, keeping the action in state court would be better than keeping it in federal court because state courts are generally better equipped to address disputes over insurance coverage that raise issues of state law. Thus, this factor also weighs against exercising jurisdiction.

Finally, the Court notes that this case presents a "mixed action" in which a "declaratory claim presents the same legal issue" as a "coercive claim" for damages "over which the [Court] must exercise jurisdiction." *Fire-Dex, LLC v. Admiral Ins. Co.*, 139 F.4th 519, 529 (6th Cir. 2025). In a case such as this, "equitable considerations will counsel heavily in favor of not abstaining." *Id.* Although the City contends that *Fire-Dex* does not apply because its complaint seeks only declaratory relief, review of the complaint indicates otherwise. In the breach-of-contract claims in Counts I and II of its complaint, the City contends that it is entitled to damages. (Compl. ¶¶ 67, 73.) And in the "declaratory relief" claims in Counts III, IV and V, the City expressly seeks an award of its costs for defending the *Braziel* and *Mitchell* lawsuits (*id.* ¶¶ 78, 81, 85), which is the proper damages remedy for breach of a duty to defend. In other words, the City clearly seeks damages as a form of relief. Also, these damages are premised on the same legal issues at stake in the declaratory action, i.e., whether Travelers' policies require it to defend and indemnify the City. Thus, *Fire-Dex* applies.

At this stage, considering the *Grand Trunk* factors discussed above, as well as the Court's "severely constrain[ed]" discretion in the context of a mixed action, *Fire-Dex*, 139 F.4th at 534, the Court will not abstain from exercising jurisdiction over the declaratory judgment claims.

### III. CONCLUSION

In summary, the Court will deny the motions to remand. Although the Injured Plaintiffs are proper parties to this action, the Court can resolve the jurisdictional problem created by their presence by realigning them to be plaintiffs. The Court also finds that abstaining from exercising declaratory judgment jurisdiction is not warranted at this stage.

The Court will enter an order consistent with this Opinion.

Dated: January 9, 2026         /s/ Hala Y. Jarbou
                               HALA Y. JARBOU
                               CHIEF UNITED STATES DISTRICT JUDGE